UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG 0 8 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| ROBERT WALSTON, as Trustee of the TEAMSTERS LOCAL 743 HEALTH & WELFARE TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>FUTURA, INC., an Illinois Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>No.<br>)<br>)<br>)<br>)<br>) 05C 4517<br><br>JUDGE CONLON<br><br>MAGISTRATE JUDGE NOLAN |

## COMPLAINT

Plaintiff, Robert Walston, as Trustee of the Teamsters Local 743 Health & Welfare Trust Fund ("Fund") by his attorney, David Mathews, complains against the Defendant, Futura, Inc. ("Futura") as follows:

### JURISDICTION AND VENUE

1. Jurisdiction and venue in this court are based upon Section 502(a),(e) and (f) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1132(a),(e) and (f), as more fully appears herein.

### THE PARTIES

2. The Fund is a multi-employer employee benefit plan within the meaning of Section 3(3) & (37) of ERISA, 29 U.S.C. §1002(3) & (37), and maintains its principal place of operation in Chicago, Illinois.

3. Plaintiff is a Trustee of the Fund and, as such, is a fiduciary within the meaning of Section 3(21) of ERISA, 29 U.S.C. §1002(21).

4. Defendant Futura is an Illinois corporation with its principal place of business within this judicial district and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5).

5. Teamsters Local 743 ("Union") is an employee organization within the meaning of Section 3(4) of ERISA, 29 U.S.C. §1002(4).

## COUNT I

6. Futura and the Union are parties to a collective bargaining agreement that is in full force and effect from November 17, 2004 through November 17, 2007, a true copy of which is attached hereto as Exhibit 1.

7. Pursuant to Article 11.6 of the collective bargaining agreement, Futura is required to make timely contributions to the Fund on behalf of each employee covered by the agreement.

8. Notwithstanding Futura's obligations, it failed to make contributions to the Fund for the period April, 2005 through the present, thereby depriving the Fund of contributions and income, jeopardizing the benefits of participants and beneficiaries, and violating Section 515 of ERISA, 29 U.S.C. §1145.

9. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), Defendant Futura is indebted to the Fund, in addition to the delinquent contributions and interest found due and owing, for attorney's fees, costs and other legal or equitable relief as this court deems appropriate.

WHEREFORE, Plaintiff requests that this court issue an order against Defendant Futura granting the following relief:

A. A judgment on behalf of Plaintiff for delinquent contributions and due and owing from Futura for the period April, 2005 through July, 2005, and for such amounts as become due

during the pendency of this proceeding, including interest on all amounts owed;

  B. A judgment on behalf of the Plaintiff for reasonable attorney's fees, and costs of this action;

  C. An Order declaring that this court will retain jurisdiction of this cause pending compliance with its orders; and

  D. Any other legal or equitable relief as this court may deem appropriate.

                   _____
                   David Mathews, attorney for Plaintiff

CARMELL CHARONE WIDMER
 MATHEWS AND MOSS
230 West Monroe Street
Suite 1900
Chicago, Illinois 60606
(312) 236-8033

Dated: August 8, 2005

3

# AGREEMENT

This Agreement, made and entered into this _____ day of _____, 2004, by and between **FUTURA, INCORPORATED** *(hereinafter called the "Company")*, its successors or assigns, and **HEALTH CARE, PROFESSIONAL, TECHNICAL, OFFICE, WAREHOUSE AND MAIL ORDER EMPLOYEES UNION, LOCAL 743**, affiliated with the International Brotherhood of Teamsters *(hereinafter called the "Union")*, AFL-CIO.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

### SECTION 1 - RECOGNITION AND REPRESENTATION

1.1     RECOGNITION:   The company recognizes the Union as the sole collective bargaining agency for all warehouse, production and maintenance employees, excluding all guards, part-time employees, professional and technical employees, office clerical employees and supervisors, as defined in the Labor-Management Relations Act of 1947, as amended.

1.2     UNION SECURITY: (A)  Each employee who, as of the date of signing of this Agreement, is a member of the Union in good standing in accordance with the Constitution and By-Laws of the Union, shall as a condition of continued employment by the Company, maintain membership in the Union during the term of this Agreement to the extent of tendering the periodic dues uniformly required as a condition of retaining membership in the Union.

(B) Each employee who is not a member of the Union on the date of signing this Agreement, and each employee who is hired on or after said date, shall as a condition of continued employment by the Company, become a member of the Union on the thirtieth (30th) day following the date of signing of this Agreement or the date of their employment, whichever is later, and maintain membership in the Union during the term of this Agreement to the extent of tendering the initiation fee and periodic dues uniformly required as a condition of acquiring or retaining membership in the Union.

1.3     The Employer agrees that on the 1st day of the 2nd month following each anniversary date of this Agreement, that the Employer will include on the Dues Pre-Billing Report submitted to the Local Union, the current hourly wage rate for each employee who is a member of the Union.

1.4     CHECK-OFF OF DUES AND INITIATION FEE:  Upon receipt of a written authorization from the employee, the Employer agrees to deduct initiation fees, monthly dues and withdrawal fees from the pay of each such employee in the amount and manner prescribed by the Union in accordance with the International's Constitution and the Local 743 By-Laws.

**EXHIBIT 1**

-2-

Such deductions must be deducted on the first pay period of each month and must be submitted to the Union <u>no later than</u> the fifteenth (15th) of that month in which the money is deducted; except that withdrawal fees shall be held by the Employer and forwarded to the Union only as required by Union procedure.

When an employee for whom a written authorization has been submitted to the Employer completes his/her first thirty (30) days of employment, the monthly dues and initiation fees shall be deducted beginning with that month in which thirtieth (30th) day falls. The initiation fee will be deducted in three (3) monthly installments.

**1.5** **CREDIT UNION:** Upon written authorization from the employee, the Company agrees to deduct once monthly Local No. 743 Credit Union savings and/or loan funds in an amount specified by such employee and remit to the appropriate Credit Union.

**1.6** <u>INDEMNIFICATION</u>: The Union agrees to indemnify and hold the Company harmless against any and all claims, suits, orders, or judgements brought or issued against the Company as a result of any action taken or not taken by the Company pursuant to any written communication from the Union under the provisions of this Section.

**1.7** <u>NO DISCRIMINATION</u>: The Company shall not discriminate against any employee because of membership in, lawful activities on behalf of, the Union or because of race, religion, color, sex, age or National origin.

## SECTION 2 - MANAGEMENT RIGHTS

2.1 The Management of the business and the direction of the working force, including but not limited to the right to plan, direct and control operations, the operations or services to be performed in or at the plant or by employees of the Company, to schedule the working hours, to hire, promote, demote and transfer, to suspend, discipline, discharge for just cause, or to relieve employees because of lack of work, or for other legitimate reasons, to make and enforce reasonable shop rules and regulations not inconsistent with the provisions of this Agreement, to introduce new and improved methods, materials of facilities, or to change existing methods, materials or facilities are vested exclusively in the Company, provided however, that such rights shall not be applied in any manner violative of any of the provisions of this Agreement.

## SECTION 3 - HOURS OF WORK AND OVERTIME

3.1 PURPOSE: This Section is intended to only provide a basis for calculating overtime and shall not be construed as a guarantee of hours of work per day or per week. There shall be no pyramiding of overtime premiums. Overtime shall not be paid more than once for the same hours worked.

3.2. **NORMAL WORKDAY AND WORKWEEK.** The workweek for payroll purposes shall be a seven (7) consecutive day period commencing at 12:01 a.m. on Monday and ending at 12:00 midnight on the following Sunday. A workday shall be the twenty-four (24) hour period commencing with the employee's scheduled starting time. The normal workday shall be five (5), days Monday through Friday, inclusive. The normal working hours per day shall be eight (8), exclusive of a lunch period, and the normal working hours per week shall be forty (40).

3.3. **OVERTIME PREMIUM.** Overtime premium shall be paid as follows:

(A) For all hours worked in excess of forty (40) hours worked in a workweek - time and one-half (1½) of the straight time hourly rate.

(B) For all hours worked in excess of eight (8) hours in any one day - time and one-half (1½) of the straight time hourly rate.

(C) For all hours worked on Saturday (where the failure to work 40 hours during the week as on account of the Company's failure to schedule employees for 40 hours) - time and one-half (1½) of the straight time hourly rate.

(D) For all hours worked on Sundays -- two (2) times the straight time hourly rate.

(E) For all hours worked on holidays listed in Section 5 -- two (2) times the straight time hourly rate.

3.4. **REPORTING TIME.** Employees who report for work at the regular starting time, and who have not been notified not to report (notice to their last address of record in the Company files or notice posted on a bulletin board during the time the employee was scheduled to work on the preceding day shall constitute notice to all employees, including those who are absent), and employees who are called to work at time other than their regular starting time, shall be guaranteed four (4) hours of work or pay for four (4) hours at the regular hourly rate. This guarantee shall not apply in the case of disciplinary suspension or discharge for cause, or where the failure to provide work results from emergencies beyond the control of the Company, such as work stoppages, accidents, fires, storms, floods, power failures, or other similar occurrences.

## SECTION 4 - VACATIONS

4.1. **AMOUNT.** Eligible employees shall be entitled each calendar year to a vacation with pay in accord with one of the following provisions:

(a) All employees who on June 1 have been employed by the Company one (1) year or more shall be granted one (1) week's vacation with pay.

(b) All employees who have continuous service of two (2) years but less than ten (10) years as of July in the year of the vacation shall be granted two (2) weeks' vacation with pay.

(c) All employees who have continuous service of nine (9) years or more as of June 1, in the year of the vacation, shall be granted three (3) weeks' vacation with pay.

(d) All employees who have continuous service of eleven (11) years or more as of June 1, in the year of the vacation, shall be granted four (4) weeks' vacation with pay.

4.2. Vacation pay shall be computed at the employee's straight time hourly rate as of June 1, of the year in which the vacation is to be taken based on a forty (40) hour week.

4.3. **ELIGIBILITY.** To be eligible for vacation benefits, as outlined above, an employee must be a full-time employee who has worked at least 1600 hours during the calendar year prior to the 1st day of June of the year in which the vacation is to be taken. If an employee works between 1000 hours and 1600 hours, his vacation benefits will be pro rated on the basis of the "hours worked" constituting the numerator and "1600" acting as the denominator (e.g., if an employee works 1200 hours, he receives 1200/1600 of vacation benefits, of 75%.

In computing the number of hours worked under this Section, credit shall be given for holidays (eight (8) hours), prior year's vacation (forty (40) hours per week), and straight time hours lost while serving on Jury Duty.

4.4. **VACATION SCHEDULES.** The time allotted to an employee for a vacation will be established by the Company and the vacation period will be such as will cause a minimum interference with Company operations. Every employee eligible for vacation pay will be

notified of the date of his vacation as far in advance as possible, and wherever possible, employees will be given preference as to the time of their vacation on the basis of seniority. The Company reserves the right to shut down its plant so that all vacations may be taken at one and the same time. In case of a shut down for vacation purposes, the Company will give reasonable notice to the Union and the employees.

## SECTION 5 - HOLIDAYS

5.1. **HOLIDAYS OBSERVED.** The following days shall be considered holidays:

| | |
|---|---|
| New Year's Eve | Thanksgiving Day |
| New Year's Day | Day After Thanksgiving |
| Memorial Day | Christmas Eve |
| Independence Day | Christmas Day |
| Labor Day | Good Friday |

5.2. **HOLIDAYS FALLING ON SUNDAY.** Holidays will be observed on the day of their occurrence, except that when Holiday falls on Sunday and is observed on Monday by the State or Federal Governments, it shall be observed on such Monday.

5.3. **HOLIDAY PAY AND ELIGIBILITY.** Employees shall be paid eight (8) hours' straight time pay for holidays not worked (four (4) one-half holiday), provided they meet all of the following eligibility requirements:

(a) The employee has completed his probationary period;

(b) The employee worked his regularly scheduled hours on his last scheduled workday prior to and on his next scheduled workday after the Holiday; and

(c) The employee performed work during the week in which the Holiday falls.

5.4. An employee shall not be eligible for Holiday pay if he is scheduled to work on the holiday and fails to work his scheduled hours on the Holiday. An employee who worked his scheduled hours on a Holiday shall receive Holiday pay in addition to his pay for the hours worked provided for in the Overtime Section.

5.5. **HOLIDAY OCCURRING DURING VACATION PERIOD.** If a Holiday falls within an eligible employee's vacation period, he shall be paid his holiday pay in addition to his vacation pay, if any.

-6-

## SECTION 6 - GRIEVANCE AND ARBITRATION

6.1. METHOD OF ADJUSTING GRIEVANCES. In order to provide an orderly method for handling and disposing of all disputes, misunderstandings, differences, or grievances arising between the Company and the Union and/or the employees covered by this Agreement as to the meaning, interpretation, and application of the provisions of this Agreement, such differences shall be settled in the following manner:

1. The Union, or the aggrieved employees, either alone or with the Shop Steward shall first take up the case with the foreman or superintendent. Discharge cases must be brought up within ten [10] days after discharge. All other grievances cannot be retroactive past the last anniversary date of the Agreement or six [6] months, whichever is longer.

2. If the matter is not adjusted at this level, the officials shall take the matter up with designated representatives of the Company. Any settlement at Step 1 or Step 2, shall be binding upon the Company, the Union and the aggrieved employee.

3. In the event that the matter is not settled at either of these foregoing levels, the Company and the Union shall refer the matter to an Arbitrator. The Arbitrator shall be selected from a list of five [5] submitted by the United States Mediation and Conciliation Service, and the cost of his services shall be borne equally by the Company and the Union. The decision of the Arbitrator shall be final and binding on the Company, the Union and the aggrieved employees.

6.2. Representatives of the Union shall have access to the plant to take care of Union business upon reasonable notice to the Company and obtaining permission therefor.

-7-

7.1    Employees covered by this Agreement shall be paid the wage rates set forth in the attached **"Schedule of Wages,"** which is hereby made part of this Agreement.

7.2    **Wage Reopeners:**  The parties shall attempt to negotiate wage settlements to take effect on **November 17, 2005** and again on **November 17, 2006**.  Wages are the only item to be negotiated and both sides may use any economic strengths they possess.  Section 10 will not apply if no wage agreement cannot be reached.

7.3    All employees who work less than the regular scheduled workweek shall be considered as part-time employees.

7.4.   Part-time employees shall not be hired for more than the minimum starting rate stipulated in the attached "Schedule of Wages," and part-time employees shall receive wage increases as provided for in said "Schedule of Wages."

7.5    Casual employees shall be paid the wage rates as stipulated in the attached "Schedule of Wages."

7.6    SHIFT PREMIUM:   Any employee who is scheduled to commence work on a night shift and works on said shift will receive a shift premium of ten cents ($0.10) per hour.

7.7    REST PERIODS:    Employees shall receive a ten (10) minute rest period during the first half and the second half of each eight (8) hour shift.

## SECTION 8 - SENIORITY

8.1    DEFINITION OF PROBATIONARY PERIOD:  Seniority is an employee's length of continuous service with the Company in years, months and days, dating from the last date of hire.  A new employee shall work under the provisions of this Agreement but shall be considered a probationary employee for the first thirty (30) days of continuous employment after which his/her seniority shall date back to the date of hire.  Probationary employees shall not have seniority and may be laid off, discharged or otherwise terminated by the Company and such action shall not be subject to the Grievance Procedure of this Agreement.

-8-

8.2. <u>LAYOFF AND RECALL.</u> In layoff and recall, seniority shall be the determining factor where ability to perform the available work is relatively equal.

8.3. <u>SENIORITY LIST.</u> The Company shall give the Union a current seniority list and shall notify the Union of any changes in said list.

8.4. <u>TERMINATION OF SENIORITY.</u> Seniority and the employment relationship shall be broken and terminated when an employee:

a.) quits;

b.) is discharged for cause;

c.) is absent for three (3) consecutive workdays without notifying the Company;

d.) fails to report to work after a layoff within five (5) workdays after a written notice of recall is sent by the Company by certified mail, return receipt requested, to the employee at his last address of record on file with the Company; or

e.) is laid off for one (1) year (in the case of employees with more than one (1) year's seniority at time of layoff) or for one-half (½) the employee's seniority (in the case of employees with less than one (1) year's seniority at time of layoff).

## SECTION 9 - LEAVES OF ABSENCE

9.1. Employees covered by this Agreement shall have the right to make application and shall have the right to determine whether or not the leave shall be granted and the duration of any leave of absence. Original leaves of absence will not be granted for a period to exceed six (6) months. Applications for leaves of absence and leaves of absence granted, shall be in writing. Leaves of absence shall be without pay and may be renewed upon written request therefor.

## SECTION 10 - NO STRIKE OR LOCKOUT

10.1. **NO STRIKES.** The Company and the Union agree that the grievance and arbitration procedures provided herein shall be the sole and exclusive means of resolving all grievances arising under the terms of this Agreement, and, further, that remedies and procedures provided by statute shall be the sole and exclusive means of settling all other disputes between the employees and the Company or between the Union and the Company. Accordingly, neither the Union or the employees will instigate, promote, sponsor, engage in, or condone any strike, slow-down, concerted stoppage of work of any other intentional interruption of work over any dispute involving the interpretation of this Agreement or over any other dispute. In the event that any employee or group of employees covered by this Agreement shall, during its term, participate or engage in any of the activities herein prohibited, the Union agrees, immediately upon being notified by the Company, to direct such employee or group of employees, in writing, to cease such activity and resume work at once. The Company shall have the right to discharge or otherwise discipline any employee who engages in any of the activities prohibited by this Section, and, in the event a grievance is filed, the sole question for arbitration shall be whether the employee engaged in the prohibited activity.

10.2. **NO LOCKOUTS.** During the term of this Agreement, the Company agrees that it will not institute a lockout.

## SECTION 11 - GENERAL

11.1. **BULLETIN BOARDS.** The Company agrees to provide a bulletin board and space on same for the Union to keep its members informed concerning Union meetings, elections recreational events and social affairs. No notices shall be posted without prior submission to the Company's Personnel Manager.

-10-

11.2   <u>SAFETY AND HEALTH</u>   The Company shall make reasonable provisions for safety and health of its employees in its plant during the hours of their employment. Under no circumstances shall an employee be required or assigned to engage in any activity in violation of any applicable statute, court order or government regulation relating to the safety of person or equipment.

11.3   <u>WORK BY NON-BARGAINING UNIT EMPLOYEES OF THE COMPANY</u>: Employees of the company who are not in the bargaining unit may perform bargaining unit work in cases of absenteeism, emergency, training of employees and in accordance with practices existing prior to the date of this Agreement, or where the performance of the work does not result in the loss of overtime to bargaining unit employees.

11.4   <u>JURY DUTY</u>   Employees whose absence is necessitated by Jury Duty will be paid the difference between their Jury Pay and the regular straight time earnings up to eight (8) hours of each day, up to eight (8) hours) of each day that they would have received had they worked, not to exceed two (2) weeks per year.

11.5   <u>DEATH IN FAMILY</u>   In the case of the death of an employee's Mother, Father, Husband, Wife, Child, Sister, Brother, Grandmother, Grandfather, Mother-In-Law, Father-In-Law, the Company will grant up to five (5) days leave with pay to the employee in order to attend the funeral. Starting day of death and end day of funeral.

11.6   <u>HEALTH AND WELFARE INSURANCE PREMIUM</u>   **Effective November 17, 2004**, the Company agrees to pay the entire cost and maintain the benefit levels of the present **Local 743 Insurance Plan** for eligible employees for the duration of the Contract. Any eligible employee may extend the coverage of appropriate benefits to his or her dependents on any subsequent day by giving notice to the Company at any time during the term of this Agreement. **(Open enrollment waiting period may apply.)** Said employee will pay the premium for such dependent coverage in the amount not exceeding the then-existing premium the company pays for employee's insurance coverage per month.

11.7   In the event an employee elects to pay for dependent coverage, the Company, upon written authorization submitted by the employee will deduct from the wages of each such employee the premium for dependent coverage of health and welfare benefits and shall forward such premium to the Health and Welfare Trust Fund together with its regular monthly contribution for employee insurance.

11.8   The Company agrees to execute within thirty (30) days hereafter formal applications as may be required with the insurance companies involved for the issuance of such policies. (Open enrollment waiting period may apply.)

11.9   The Company hereby agrees to make payment of the contributions on or before the 15th of the month for all employees who work at least one (1) day in the month. If he/she is performing work only between the 15th day and the end of that month, a contribution for that month is payable to the following month in addition to the contribution then due. All remittances of contribution shall be to the order of the Trust and shall be forwarded to the Union Office or such other place designated by the Union, together with reports containing the names of the employees involved and such other data as may be required by the Trustees of the Trust.

11.10   It is agreed by the Company that it will be responsible for any and all claims filed or incurred by an employee (or his/her beneficiary) or by his/her dependents, if the Company was legally obligated to pay contributions under this contract and fails to pay the monthly contributions to the Trust when due, and if such claims are paid by the Trust, the Company shall pay the Trust.

11.11   Notwithstanding anything herein contained, it is agreed that in the event the Company does not pay the monthly contribution when due (*i.e., delinquent*), the Company may be assessed additional sums during the period of delinquency in accordance with the rules and regulations of the Trustees of the Trust. Further, after the proper official of the Local Union has given seventy-two (72) hours notice to the Company of such delinquency in Health and Welfare payments, the employee or his/her representative(s) shall have the right to take such action as may be necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Company shall be responsible to the employees for losses resulting therefrom.

11.12   It is expressly agreed that the welfare and security benefits provided in said insurance policies shall be applicable only to regular employees of the Company who have been employed for at least ninety (90) days.

11.13   The Company agrees to continue the payment of the above premiums during the absence of an employee due to accident, pregnancy or illness on the basis of three (3) months' premium for employees who had less than one year of seniority at beginning of absence and twelve (12) months' premium for employees with more than one (1) year seniority.

-12-

## TERMINATION

      This Agreement expresses the entire understanding of the Company and the Union, and it shall be in full force and effect from **November 17, 2004** to and including **November 17, 2007**, and shall renew itself thereafter on an annual basis automatically, unless either party serves written notice upon the other at least sixty (60) days prior to November 17, 2007 or the anniversary date in any succeeding year of its desire to modify or terminate this Agreement.

      IN WITNESS WHEREOF, the parties hereto have set their hands and seals this _____ day of _____ 200____.

|  |  |
|---|---|
|  | **HEALTH CARE, PROFESSIONAL, TECHNICAL, OFFICE, WAREHOUSE AND MAIL ORDER EMPLOYEES UNION,** |
| **FUTURA, INCORPORATED** | **LOCAL 743, IBT, AFL-CIO** |

By: _____
         President

By: _____
         Robert Walston, President

By: _____

By: _____
         Michael Corrigan, Business Representative

By: _____

By: _____
         Felix Martinez, Negotiating Committee

By: _____

# FUTURA, INCORPORATED

## SCHEDULE OF WAGES

|  | START | 30 DAYS SENIORITY |
|---|---|---|
| General Labor | $6.40 | $6.60 |
| General Labor - Heavy | $6.55 | $6.80 |
| Sprayer | $6.85 | $7.05 |

### For all Local 743 Bargaining Unit Members:

| | |
|---|---|
| Effective **November 17, 2004** | Ten cent (10¢) per hour wage increase |
| Effective **November 17, 2005** | **Wage Reopener** |
| Effective **November 17, 2006** | **Wage Reopener** |